# U.S. District Court
## Eastern District of New York (Brooklyn)
## CIVIL DOCKET FOR CASE #: 1:12–cv–01835–SJ–RLM

| | |
|---|---|
| Williamson v. Takeda Pharmaceutical North America, Inc. et al | Date Filed: 04/13/2012 |
| Assigned to: Senior Judge Sterling Johnson, Jr | Jury Demand: Defendant |
| Referred to: Magistrate Judge Roanne L. Mann | Nature of Suit: 365 Personal Inj. Prod. |
| Cause: 28:1441 Notice of Removal | Liability |
| | Jurisdiction: Diversity |

**Plaintiff**

**Bethina Williamson**
*individually and as the Proposed
Administratrix of the Estate of Alberta
McKevie*

represented by **Paul J. Pennock**
Weitz &Luxenberg, P.C.
700 Broadway
New York, NY 10003
212–558–5504
Fax: 212–363–2721
Email: ppennock@weitzlux.com
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Takeda Pharmaceutical North
America, Inc.**

represented by **Colin James Garry**
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
212–839–5792
Fax: 212–839–5599
Email: cgarry@sidley.com
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**James D. Arden**
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
212–839–5300
Fax: 212–839–5599
Email: jarden@sidley.com
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Defendant**

**Takeda Pharmaceutical Company
Limited**

represented by **Colin James Garry**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**James D. Arden**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Defendant**

**Takeda Pharmaceuticals LLC.**

represented by **Colin James Garry**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**James D. Arden**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Takeda Pharmaceuticals International, Inc.**                 represented by **Colin James Garry**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James D. Arden**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Takeda Global Research &Development Center Inc.**                 represented by **Colin James Garry**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James D. Arden**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Takeda San Diego, Inc.**                 represented by **Colin James Garry**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James D. Arden**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/13/2012 | 1 | NOTICE OF REMOVAL from the Supreme Court of the State of New York, Kings County by Takeda Global Research &Development Center Inc., Takeda Pharmaceutical Company Limited, Takeda Pharmaceutical North America, Inc., Takeda Pharmaceuticals International, Inc., Takeda Pharmaceuticals LLC., Takeda San Diego, Inc. ( Filing fee $ 350) Disclosure Statement on Civil Cover Sheet completed –no, (Attachments: # 1 Civil Cover Sheet) (Bowens, Priscilla) (Entered: 04/16/2012) |
| 04/13/2012 |  | FILING FEE: $ 350, receipt number 4653042568 (Bowens, Priscilla) (Entered: 04/16/2012) |
| 04/13/2012 | 2 | DISCLOSURE of Interested Parties by Takeda Pharmaceutical Company Limited, Takeda San Diego, Inc., Takeda Pharmaceutical North America, Inc., Takeda Pharmaceuticals LLC., Takeda Pharmaceuticals International, Inc., Takeda Global Research &Development Center Inc.. (Bowens, Priscilla) (Entered: 04/16/2012) |
| 04/16/2012 | 3 | ANSWER to Complaint by Takeda Global Research &Development Center Inc., Takeda Pharmaceutical North America, Inc., Takeda Pharmaceuticals International, Inc., Takeda Pharmaceuticals LLC., Takeda San Diego, Inc.. (Garry, Colin) (Entered: 04/16/2012) |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

------------------------------------------------------------------------X

BETHINA WILLIAMSON, INDIVIDUALLY, AND AS THE
PROPOSED ADMINISTRATRIX OF THE ESTATE OF
ALBERTA MCKEVIE,

                                                        **Index No.:**

              Plaintiffs,

                                                        **VERIFIED COMPLAINT**

        -against-

TAKEDA PHARMACEUTICALS NORTH AMERICA INC.,
TAKEDA PHARMACEUTICAL COMPANY LIMITED,
TAKEDA PHARMACEUTICALS LLC., TAKEDA
PHARMACEUTICALS INTERNATIONAL INC.,
TAKEDA GLOBAL RESEARCH & DEVELOPMENT
CENTER INC., TAKEDA SAN DIEGO INC.,

              Defendants.

------------------------------------------------------------------------X

        Plaintiff by her attorneys, **WEITZ & LUXENBERG, P.C.**, complaining of the

Defendants herein, upon information and belief, and at all times hereinafter mentioned, alleges as

follows:

### NATURE OF THE CASE

        1.      This is an action for personal injury on behalf of the Plaintiffs Bethina

Williamson, individually, and as the Proposed Administratrix of the estate of Alberta McKevie

against the Defendants who were responsible for the prescription drug Actos, a diabetes

medication used by Plaintiff Alberta McKevie which caused her bladder cancer and was the

cause of her death.

## PARTIES

2.      Plaintiff is a resident of Aikens, South Carolina

3.      Upon information and belief, Defendant TAKEDA PHARMACEUTICALS NORTH AMERICA INC. is a Delaware corporation, having a principal place of business at One Takeda Parkway, Deerfield, Illinois    60015.    As part of its business, TAKEDA PHARMACEUTICALS NORTH AMERICA INC. is involved in the research, development, sales and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

4.      Defendant TAKEDA PHARMACEUTICAL COMPANY LIMITED is a Japanese corporation having a principal place of business at 1-1, Doshomachi 4-chome, Chuoku, Osaka, Japan. As part of its business, TAKEDA PHARMACEUTICAL COMPANY LIMITED is involved in the research, development, sales, and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

5.      Defendant TAKEDA PHARMACEUTICALS LLC. is a Delaware limited liability company, having a principal place of business at One Takeda Parkway, Deerfield, Illinois 60015. As part of its business, TAKEDA PHARMACEUTICALS LLC. is involved in the research, development, sales and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

6.      Defendant TAKEDA PHARMACEUTICALS INTERNATIONAL INC. is an Illinois corporation, having a principal place of business at One Takeda Parkway, Deerfield, IL 60015. As part of its business TAKEDA PHARMACEUTICALS INTERNATIONAL INC. is involved in the research, development, sales and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

7.     Defendant TAKEDA GLOBAL RESEARCH & DEVELOPMENT CENTER INC. is an Illinois corporation, having a principal place of business at One Takeda Parkway, Deerfield, IL 60015. As part of its business TAKEDA GLOBAL RESEARCH & DEVELOPMENT CENTER INC. is involved in the research, development, sales and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

8.     Defendant TAKEDA SAN DIEGO INC. is a California corporation, having a principal place of business at 10410 Science Center Drive, San Diego, CA 92121. As part of its business TAKEDA SAN DIEGO INC. is involved in the research, development, sales and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

9.     Upon information and belief, at relevant times, Defendants were engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce and into the State of New York, either directly or indirectly through third parties or related entities, its products, including Actos and pioglitazone hydrochloride.

10.     At relevant times, Defendants conducted regular and sustained business and engaged in substantial commerce and business activity in the State of New York, which included but was not limited to selling, marketing and distributing its products including Actos and pioglitazone hydrochloride in New York.

11.     Upon information and belief, at all relevant times, Defendants expected or should have expected that their acts would have consequences within the United States of America including the State of New York, and Defendants derived and derive substantial revenue from interstate commerce.

12.     Upon information and belief, Defendant TAKEDA PHARMACEUTICAL

COMPANY LIMITED is a company domiciled in Japan and is the parent/holding company of Defendants TAKEDA PHARMACEUTICALS INTERNATIONAL INC., TAKEDA PHARMACEUTICALS NORTH AMERICA INC., TAKEDA PHARMACEUTICALS LLC., TAKEDA GLOBAL RESEARCH & DEVELOPMENT CENTER INC., TAKEDA SAN DIEGO INC.

13.     Upon information and belief, at all relevant times, Defendant TAKEDA PHARMACEUTICAL COMPANY LIMITED exercised and exercises dominion and control over Defendants TAKEDA PHARMACEUTICALS INTERNATIONAL INC., TAKEDA PHARMACEUTICALS NORTH AMERICA INC., TAKEDA PHARMACEUTICALS LLC., TAKEDA GLOBAL RESEARCH & DEVELOPMENT CENTER INC., TAKEDA SAN DIEGO INC

14.     Upon information and belief, at all relevant times, Defendant TAKEDA PHARMACEUTICAL COMPANY LIMITED expected or should have expected that its acts would have consequences within the United States of America and the State of New York, derived and derive substantial revenue from interstate commerce.

15.     Upon information and belief, at all relevant times, Defendants, including Defendant TAKEDA PHARMACEUTICAL COMPANY LIMITED have transacted and conducted business in the State of New York. and/or contracted to supply goods and services within the State of New York and these causes of action have arisen from same.

16.     Upon information and belief, at all relevant times, Defendants, including Defendant TAKEDA PHARMACEUTICAL COMPANY LIMITED committed a tortuous act without the State of New York causing injury within the State of New York out of which act(s) these causes of action arise.

17.     Upon information and belief, at all relevant times, Defendants, including Defendant TAKEDA PHARMACEUTICAL COMPANY LIMITED committed tortuous act(s) within the State of New York out of which act(s) these causes of action arise.

## FACTS

18.     At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, Actos and pioglitazone hydrochloride for treatment of Type 2 Diabetes Mellitus.

19.     Actos received FDA approval in 1999 to treat Type 2 Diabetes Mellitus.

20.     Prior to applying for and obtaining approval for Actos, Defendants knew or should have known that Actos use in humans was associated with and/or would cause the induction of bladder cancer and Defendants possessed pre-clinical scientific studies including animal evidence, which evidence Defendants knew or should have known was a signal that bladder cancer risk needed to be further tested and studied before placing Actos on the market.

21.     Despite bladder cancer findings in animal model carcinogenicity studies and other pre-clinical evidence, Defendants failed to adequately conduct complete and proper testing of Actos prior to filing its New Drug Application of Actos.

22.     It is now known that additional bladder cancer evidence from human clinical trials also became known to Defendants in the early 2000's.

23.     From the date of approval to market Actos, Defendants made, distributed, marketed and sold Actos without adequate warning to Plaintiff's prescribing physicians or plaintiff that Actos was associated with and/or could cause bladder cancer and presented a risk of bladder cancer in patients who used it and without adequate warning that Defendants had not

adequately conducted complete and proper testing and studies of Actos with regard to carcinogenicity.

24.     For over 10 years and to date, Defendants concealed and failed to completely disclose its knowledge that Actos was associated with or could cause bladder cancer or its knowledge that it had failed to fully study and test regarding that risk.

25.     Defendants' failure to disclose information that they possessed regarding the failure to adequately study and test Actos for bladder cancer risk further rendered warnings for this medication inadequate.

26.     Upon information and belief, Defendants ignored the association between the use of Actos and pioglitazone hydrochloride and the risk of developing bladder cancer.

27.     On June 7, 2011, the Caisse nationale de l'assurance maladie, at the request of the French regulatory agency, published a report concluding that there is a statistically significant association between exposure to pioglitazone (Actos) and bladder cancer and that the risk increased with exposure longer than one year.

28.     On June 9, 2011, the European Medicine Agency suspended the use of Actos in light of the French Marketing Authorization Committee and the French National Pharmacovigilance Committee's findings regarding the increased risk of bladder cancer.

29.     On June 10, 2011, Germany's Federal Institute for Drugs and Medical Devices suspended the use of Actos.

30.     On June 15, 2011, the FDA informed the public that use of the diabetes medication Actos for more than one year may be associated with an increased risk of bladder cancer. The Actos label was then changed to reflect this information in the Warnings and

Precautions section as well as the patient Medication Guide to include information regarding the risk of bladder cancer.

31.     FDA further recommended on June 15, 2011 that healthcare physicians discontinue pioglitazone use in patients with active bladder cancer.

32.     On June 17, 2011, Health Canada Press Release indicated that in light of studies suggesting an increased risk of bladder cancer with the diabetes drug pioglitazone, as well as actions taken by other regulatory agencies, Health Canada informed healthcare professionals and Canadians that it is undertaking a review of the drug's status.

33.     As a proximate result of Defendants' conduct, Plaintiff's physician prescribed Actos to said Plaintiff and said Plaintiff used Actos up until her date of death on November 17, 2008.

34.     As result of using Defendants' Actos, Plaintiff Alberta McKevie was caused to suffer bodily injury in the May of 2008 including cancerous tumor(s) in her bladder and was thus caused to sustain severe and permanent personal injuries, pain, suffering, and mental anguish resulting in death on November 17, 2008.

35.     The injuries and damages sustained by Plaintiff was caused or substantially contributed to by Defendants' Actos and the Defendants' wrongful conduct.

36.     The product warnings for Actos in effect during the time period Plaintiff used Actos were vague, incomplete or otherwise inadequate, both substantively and graphically, to alert prescribing physicians as well as Plaintiff of the bladder cancer risk associated with this drug.

37.     The Defendants did not provide adequate warnings to Plaintiff's doctors, Plaintiff, the health care community and the general public about the increased risk of serious adverse events that are described herein.

38.     Had Plaintiff been adequately warned of the potential life-threatening side effects of the Defendants' Actos, Plaintiff would not have purchased or taken Actos and would have chosen to request other treatments or prescription medications.

39.     By reason of the foregoing, Plaintiff developed serious and dangerous side effects including bladder cancer, death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life.

## EQUITABLE TOLLING OF APPLICABLE
## STATUTES OF LIMITATIONS

40.     The running of any statute of limitation has been tolled by reason of the Defendants' conduct.   The Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiff and Plaintiff's prescribing physicians the true risks associated with Actos and pioglitazone hydrochloride.

41.     As a result of the Defendants' actions, Plaintiff and Plaintiff's prescribing physicians were unaware, and could not reasonably know or have learned through reasonable diligence that Plaintiff had been exposed to the risks alleged herein and that those risks were the direct and proximate result of Defendants' acts and omissions.

42.     Furthermore, the Defendants are estopped from relying on any statute of limitations because of their concealment of the truth, quality and nature of Actos and pioglitazone hydrochloride.   The Defendants were under a duty to disclose the true character,

quality and nature of Actos because this was non-public information which the Defendants had and continue to have exclusive control, and because the Defendants knew that this information was not available to the Plaintiff, her medical providers and/or to her health facilities.

43.     Defendants had the ability to and did spend enormous amounts of money in furtherance of their purpose of marketing and promoting a profitable drug, notwithstanding the known or reasonably known risks.  Plaintiff and medical professionals could not have afforded and could not have possibly conducted studies to determine the nature, extent and identity of related health risks, and were forced to rely on Defendants' representations.

**PLAINTIFF IS ENTITLED TO A TOLLING
OF THE STATUTE OF LIMITATIONS
PURSUANT TO CPLR § 214-C**

44.     Plaintiff's injuries occurred within three years of the date hereof and/or Plaintiff discovered the cause of their injuries less than five years after discovery of the injury was discovered or when the injury, with reasonable diligence, should have been discovered and the technical, scientific or medical knowledge and information sufficient to ascertain the cause of Plaintiff's injuries had not been discovered, identified or determined prior to the expiration of the period within which the action could have been brought.

**FIRST CAUSE OF ACTION
AS AGAINST THE DEFENDANTS
(NEGLIGENCE)**

45.     Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

46.     Defendants had a duty to Plaintiffs to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging, sale and/or distribution of Actos and pioglitazone hydrochloride into the stream of commerce, including a

duty to assure that Actos and pioglitazone hydrochloride would not cause users to suffer unreasonable, dangerous side effects such as cancer.

47.     Defendants failed to exercise ordinary care and/or were reckless in designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of Actos into interstate commerce in that Defendants knew or should have known that using Actos caused a risk of unreasonable, dangerous side effects, including bladder cancer.

48.     Despite the fact that Defendants knew or should have known that Actos was associated with and/or caused bladder cancer, Defendants continued to market, manufacture, distribute and/or sell Actos to consumers, including the Plaintiff.

49.     Defendants knew or should have known that consumers such as the Plaintiff would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

50.     Defendants' negligence and/or recklessness was the proximate cause of Plaintiff's injuries, harm and economic loss which he suffered and/or will continue to suffer.

51.     As a result Defendants' negligence and/or recklessness the Plaintiff was caused to develop serious and dangerous side effects including bladder cancer, death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life.

52.     By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages in the sum that exceeds the jurisdictional limits of all lower courts that might otherwise have jurisdiction.

53.     The limitations on liability set forth in CPLR § 1601 do not apply to this action by reason of one or more of the exceptions set forth in CPLR § 1602.

## SECOND CAUSE OF ACTION
## AS AGAINST DEFENDANTS
## (STRICT PRODUCTS LIABILITY - FAILURE TO WARN)

54.     Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

55.     Defendants researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, marketed, and/or introduced Actos into the stream of commerce, and in the course of same, directly advertised or marketed Actos and pioglitazone hydrochloride to consumers or persons responsible for consumers, and therefore, had a duty to both the Plaintiff directly and Plaintiff's physician to warn of risks associated with the use of the Product.

56.     Defendants had a duty to warn of adverse drug reactions, which they know or have reason to know can be caused by the use of Actos and pioglitazone hydrochloride and/or are associated with the use of Actos and pioglitazone hydrochloride.

57.     The Actos and pioglitazone hydrochloride manufactured and/or supplied by the Defendants was defective due to inadequate post-marketing warnings and/or instructions because, after the Defendants knew or should have known of the risks of bladder cancer from Actos use, they failed to provide adequate warnings to consumers of the product, including Plaintiff and Plaintiff's physicians, and continued to aggressively promote Actos.

58.     Due to the inadequate warning regarding bladder cancer, Actos was in a defective condition and unreasonably dangerous at the time that it left the control of the Defendants.

59.     Defendants failed to adequately warn Plaintiff and Plaintiff's prescribing physicians of human and animal results in preclinical studies pertaining to bladder cancer and Actos.

60.     Defendants' failure to adequately warn Plaintiff and Plaintiff's prescribing physicians of a bladder cancer risk prevented Plaintiff's prescribing physicians and Plaintiff from correctly and fully evaluating the risks and benefits of Actos and pioglitazone hydrochloride.

61.     Had Plaintiffs been adequately warned of the potential life-threatening side effects of the Defendants' Actos and pioglitazone hydrochloride, Plaintiff would not have purchased or taken Actos and could have chosen to request other treatments or prescription medications.

62.     Upon information and belief, had Plaintiff's prescribing physicians been adequately warned of the potential life-threatening side effects of the Defendants' Actos and pioglitazone hydrochloride, Plaintiff's prescribing physicians would have discussed the risks of bladder cancer and Actos with the Plaintiff and/or would not have prescribed it.

63.     As a foreseeable and proximate result of the aforementioned wrongful acts and omissions of Defendants, Plaintiff was caused to suffer from the aforementioned injuries and damages.

64.     By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages in the sum that exceeds the jurisdictional limits of all lower courts that might otherwise have jurisdiction.

65.     The limitations on liability set forth in CPLR § 1601 do not apply to this action by reason of one or more of the exceptions set forth in CPLR § 1602.

## THIRD CAUSE OF ACTION
## AS AGAINST THE DEFENDANTS
## (STRICT PRODUCTS LIABILITY - DEFECTIVE DESIGN)

66.     Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

67.     Actos was expected to, and did, reach the intended consumers, handlers, and persons coming into contact with the product without substantial change in the condition in which it was produced, manufactured, sold, distributed, labeled, and marketed by Defendants.

68.     At all times relevant, Actos was manufactured, designed, and labeled in an unsafe, defective, and inherently dangerous condition, which was dangerous for use by the public, and, in particular, by Plaintiff.

69.     Actos and pioglitazone hydrochloride as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendants was defective in design and formulation in that when it left the hands of the manufacturers and/or suppliers the foreseeable risks exceeded the alleged benefits associated with the design and formulation of Actos.

70.     Actos and pioglitazone hydrochloride as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendants was defective in design and formulation, because when it left the hands of Defendants' manufacturers and suppliers it was unreasonably dangerous and was also more dangerous than the ordinary consumer would expect.

71.     At all times herein mentioned, Actos and pioglitazone hydrochloride was in a defective condition and was unsafe, and Defendants knew and had reason to know that the

product was defective and inherently unsafe, especially when Actos was used in a form and manner instructed and provided by Defendants.

72.     Defendants had a duty to create a product that was not unreasonably dangerous for its normal, common, intended use.

73.     At the time of Plaintiff's use of Actos, it was being used for its intended purpose, and in a manner normally intended, namely for the treatment of Type 2 Diabetes Mellitus.

74.     Defendants researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold and marketed a defective product that caused an unreasonable risk to the health of consumers, and to Plaintiff in particular, and Defendants are therefore strictly liable for the injuries and damages sustained by Plaintiff.

75.     At the time Defendants' product left their control, there was a practical, technically feasible, and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of Actos. This was demonstrated by the existence of other Type 2 Diabetes Mellitus medications which had a more established safety profile and a considerably lower risk profile.

76.     Plaintiffs could not, by the reasonable exercise of care, have discovered Actos's defects and perceived its danger.

77.     The defects in Defendants' product were substantial and contributing factors in causing Plaintiff's injuries.

78.     As a foreseeable, direct, and proximate result of the aforementioned wrongful acts and omissions of Defendants, Plaintiff was caused to suffer from the aforementioned injuries and damages.

79.     Due to the unreasonably dangerous condition of Actos, Defendants are strictly liable to Plaintiff

80.     By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages in the sum that exceeds the jurisdictional limits of all lower courts that might otherwise have jurisdiction.

81.     The limitations on liability set forth in CPLR § 1601 do not apply to this action by reason of one or more of the exceptions set forth in CPLR § 1602.

### FOURTH CAUSE OF ACTION
### AS AGAINST THE DEFENDANTS
### (BREACH OF EXPRESS WARRANTY)

82.     Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

83.     Defendants expressly warranted that Actos was safe for its intended use and as otherwise described in this complaint.  Actos did not conform to these express representations, including, but not limited to, the representation that it was well accepted in patient and animal studies, the representation that it was safe, and the representation that it did not have high and/or unacceptable levels of life-threatening side effects like bladder cancer, that it would improve health, maintain health, and potentially prolong life.

84.     The express warranties represented by the Defendants were a part of the basis for Plaintiff's use of Actos and Plaintiff relied on these warranties in deciding to use Actos.

85.     At the time of the making of the express warranties, the Defendants had knowledge of the purpose for which the Actos and pioglitazone hydrochloride was to be used, and warranted same to be in all respects safe, effective and proper for such purpose.

86.     Actos does not conform to these express representations because Actos is not safe or effective and may produce serious side effects, including among other things bladder cancer, degrading Plaintiff's health, and shrinking her life expectancy.

87.     As a result of the foregoing breach of express warranty the Plaintiff was caused to develop serious and dangerous side effects including bladder cancer, death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life.

88.     By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages in the sum that exceeds the jurisdictional limits of all lower courts that might otherwise have jurisdiction.

89.     The limitations on liability set forth in CPLR § 1601 do not apply to ther action by reason of one or more of the exceptions set forth in CPLR § 1602.

### FIFTH CAUSE OF ACTION
### AS AGAINST THE DEFENDANTS
### (BREACH OF IMPLIED WARRANTY
### FOR A PARTICULAR PURPOSE)

90.     Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

91.     At all times herein mentioned, the Defendants manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold Actos and pioglitazone hydrochloride, to treat Type 2 Diabetes Mellitus.

92.     The Defendants impliedly represented and warranted to the users of Actos that Actos was safe and fit for the particular purpose for which said product was to be used, namely treating diabetes, improving health, maintaining health, and potentially prolonging life.

93.     These representations and warranties aforementioned were false, misleading, and

16

inaccurate in that Actos and pioglitazone hydrochloride were unsafe, degraded Plaintiff's health and shortened her life expectancy.

94.     Plaintiff relied on the implied warranty of fitness for a particular use and purpose.

95.     Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether Actos was safe and fit for its intended use.

96.     Actos and pioglitazone hydrochloride were injected into the stream of commerce by the Defendants in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

97.     Defendants breached the aforesaid implied warranty, as their drug Actos was not fit for its intended purposes and uses.

98.     As a result of the foregoing breach of warranty, Plaintiff was caused to develop serious and dangerous side effects including bladder cancer, death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life.

99.     By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages in the sum that exceeds the jurisdictional limits of all lower courts that might otherwise have jurisdiction.

100.     The limitations on liability set forth in CPLR § 1601 do not apply to this action by reason of one or more of the exceptions set forth in CPLR § 1602.

## SIXTH CAUSE OF ACTION AS
## AGAINST THE DEFENDANTS
## (BREACH OF IMPLIED WARRANTY
## OF MERCHANTABILITY)

101.   Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

102.   Defendants manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold Actos and pioglitazone hydrochloride, to treat Type 2 Diabetes Mellitus.

103.   Defendants marketed, sold and distributed Actos and knew and promoted the use for which Actos was being used by Plaintiff and impliedly warranted to Plaintiff that Actos was of merchantable quality and fit for the ordinary purpose for which it was intended, namely treating diabetes, improving health, maintaining health, and potentially prolonging life.

104.   These representations and warranties aforementioned were false, misleading, and inaccurate in that Actos and pioglitazone hydrochloride were unsafe, degraded Plaintiff's health and shortened her life expectancy.

105.   Plaintiff reasonably relied on the skill, expertise and judgment of the Defendants and its representations as to the fact that Actos was of merchantable quality.

106.   The Actos and pioglitazone hydrochloride manufactured and supplied by the Defendants was not of merchantable quality, as warranted by the Defendants in that the drug had dangerous and life threatening side effects and was thus not fit for the ordinary purpose for which it was intended.

107.   As a direct and proximate result of the foregoing, Plaintiff was caused bodily injury, pain and suffering and economic loss.

108.    As a result of the foregoing acts and omissions, Plaintiff was caused to develop serious and dangerous side effects including bladder cancer, death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life.

109.    By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages in a sum that exceeds the jurisdictional limits of all lower courts that might otherwise have jurisdiction.

110.    The limitations on liability set forth in CPLR § 1601 do not apply to ther action by reason of one or more of the exceptions set forth in CPLR § 1602.

### SEVENTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS (VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW SECTION 349)

111.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

112.    Defendants have intentionally and wrongfully represented deceptive, inaccurate, false and misleading material information as to the safety of Actos to Plaintiff's physicians, Plaintiff, and other consumers.

113.    Defendants knew or reasonably should have known that Actos and pioglitazone hydrochloride carried the risk of serious adverse effects, including but not limited to bladder cancer, to its intended users, including Plaintiff.

114.    Defendants failed to disclose material facts in the conduct of trade or commerce in that they did not disclose the risk of serious adverse effects to the intended users of Actos.

115.    Reasonable consumers, including Plaintiff, were injured by Defendants' unfair and deceptive acts.

116.    By reason of the foregoing, Plaintiff was caused bodily injury, pain, suffering and economic loss.

117.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered actual damages and requests an award of damages against Defendants, as authorized by New York General Business Law § 349, et seq.  Plaintiffs are entitled to statutory damages, costs and reasonable attorney's fees, plus disgorgement of any profits Defendants earned as a result of their violation of the law.


### EIGTH CAUSE OF ACTION
### AS AGAINST THE DEFENDANTS
### (WRONGFUL DEATH  AND SURVIVORSHIP)

118.    Plaintiffs incorporate by reference each and every prior and subsequent allegation of this complaint as if fully restated here.

119.    Alberta McKevie suffered fatal injures due to the Defendants' wrongful conduct as set forth herein.

120.    Alberta McKevie was survived by distributees who are beneficiaries to this cause of action.

121.    Alberta McKevie incurred conscious pain and suffering leading up to her untimely death.

122.    Due to the death of Alberta McKevie, the decedent's distributees lost the value of Alberta McKevie financial benefits, services, society, comfort and care for which they are

entitled to recover and the estate incurred medical expenses and incurred other necessary expenses related to her death.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demands judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

1.　　　Awarding compensatory damages to Plaintiffs for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiffs, health care costs, medical monitoring, together with interest and costs as provided by law;

2.　　　Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiffs in an amount sufficient to punish Defendants and deter future similar conduct;

3.　　　Awarding Plaintiff's attorney's fees;

4.　　　Awarding Plaintiffs the costs of these proceedings; and

5.　　　Such other and further relief as ther Court deems just and proper.

Dated: November 17, 2011

By: _____
　　　　　　Jonathan M. Sedgh

**WEITZ & LUXENBERG, P.C.**
*Attorneys for Plaintiff*
700 Broadway
New York, New York 10003
Phone: (212) 558-5500
Facsimile: (212) 363-2721